UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID F. SCOLIO, | No. CV-10-301-CI |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO AMEND OR ALTER JUDGMENT |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Pursuant to FED. R. CIV. P. 59(e), Defendant Michael Astrue, Commissioner of Social Security ("Defendant") moved to alter or amend this court's judgment reversing the Commissioner's denial of disability benefits to Plaintiff and remanding for payment of benefits. Under Rule 59(e), a motion to alter or amend judgment may be granted where "necessary to correct manifest errors of law or fact upon which the judgment is based." *Turner v. Burlington Northern Santa Fe Railroad*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citations omitted). The Defendant contends that reconsideration is necessary to correct the court's manifest error in determining that the Plaintiff's severe impairment (mental retardation) satisfied the requirements of 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05C. The Defendant asserts that the court erred by "incorrectly accept[ing] the IQ scores without addressing the ALJ's treatment of the medical evidence and corresponding inference that Plaintiff's IQ scores were not valid." (ECF No. 21 at 3.) Plaintiff disagrees. (ECF No. 26.) This court concludes it did not err in finding Plaintiff's IQ scores met the Listing and by awarding benefits to Plaintiff.

ORDER DENYING DEFENDANT'S MOTION TO AMEND OR ALTER JUDGMENT - 1

**A.   ASSESSMENT OF THE LISTING CRITERIA**

Defendant argues that the court committed a manifest error of fact and law by relying upon IQ scores that were rejected by the ALJ. The Defendant contends that the ALJ's reason for rejecting the medical evidence creates a "corresponding inference" that the tests administered by the physicians were invalid. Defendant also argues that even if the IQ scores were valid, Plaintiff does not meet listing 12.05C because he lacks a second impairment.

**1.   IQ Scores**

Defendant argues that the court relied upon IQ scores that were rejected by the ALJ. Defendant contends that the ALJ reasonably interpreted James E. Bailey, Ph.D.'s opinion as rejecting Plaintiff's IQ scores. (ECF No. 21 at 4.) Defendant acknowledges "neither the ALJ nor Dr. Bailey explicitly addressed this issue." (ECF No. 21 at 4.) The Defendant argues that "Dr. Bailey's opinion, which the ALJ accepted, concluded that Plaintiff's IQ scores were not below 71 because he diagnosed borderline intellectual functioning rather than mild mental retardation." (ECF No. 21 at 4-5.)

The ALJ gave "significant weight" to the opinion of James E. Bailey, Ph.D., who administered several tests to Plaintiff, including the Full Scale IQ, which indicated Plaintiff's IQ was 64. (Tr. 25; 196-99.) Dr. Bailey, a consultative examiner, saw Plaintiff on September 30, 2008, and administered several tests. (Tr. 196.) On the WAIS-IV, Plaintiff's verbal comprehension score was in the mildly mentally retarded range and his perceptual reasoning was in the borderline range. (Tr. 24.) Plaintiff's Full Scale IQ score was 64. (Tr. 198.) Dr. Bailey noted that a Full

ORDER DENYING DEFENDANT'S MOTION TO AMEND OR ALTER JUDGMENT - 2

Scale IQ score of 64 was technically in the mentally retarded range, and without elaboration, he concluded that Plaintiff's "history is more consistent with borderline IQ."[1] (Tr. 198.)

As Defendant acknowledged, neither Dr. Bailey nor the ALJ's opinion explicitly rejected Plaintiff's IQ scores.  Dr. Bailey simply asserted Plaintiff's "*history* is more consistent with a borderline IQ." (Tr. 198.) (Emphasis added.)  The ALJ repeated Dr. Bailey's assertion, and indicated she gave "great weight" to the opinion. (Tr. 24-25.)  These conclusory statements fail to support Defendant's argument.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (error for district court to affirm ALJ's credibility decision "based on evidence [ALJ] did not discuss" and "specific facts or reasons" ALJ did not assert); *see also Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").  With an IQ score of 64, Plaintiff has demonstrated the requisite IQ score to qualify as "significantly subaverage general intellectual

---

[1] Borderline intellectual functioning" describes an IQ ranging between 71 and 84.  American Psychiatric Assn, *Diagnostic and Statistical Manual,* Fourth Ed., Text Rev. (2000), p. 740.  A borderline IQ range is outside the range prescribed by Listing § 12.05.  To meet Listing § 12.05, including § 12.05C, plaintiff must show an IQ score below 71.  20 C.F.R. Pt. 404, Supt. P, App. 1, § 12.05.

ORDER DENYING DEFENDANT'S MOTION TO AMEND OR ALTER JUDGMENT - 3

functioning" for purposes of Listing § 12.05C.[2]

Next, Defendant argues that the ALJ rejected the test scores adopted by Dr. Mabee[3] and, therefore, it was error for this court to

---

[2]In *Brown v. Secretary of Health & Human Services*, the United States Court of Appeals for the Sixth Circuit determined the Plaintiff's IQ score of 68 to be valid and his abilities to be within the DSM-III-R diagnosis of mild mental retardation corresponding to an IQ between 50-55 and 70. In that case, the Plaintiff used public transit, had a driver's license, visited friends, made change at the grocery store, did his own laundry and cleaned his room, and worked as a truck driver and used a road atlas, recorded his mileage, the hours he worked, and the places he drove. *Brown v. Secretary of Health & Human Services*, 948 F.2d 268, 269-70 (6th Cir. 1991).

The *Brown* court explained that individuals with mild mental retardation can acquire academic skills up to about sixth-grade level, and during adult years, they can usually achieve social and vocational skills adequate for minimum self-support, but may need guidance and assistance when under unusual social or economic stress. *Id.* "At the present time, virtually all people with Mild Mental Retardation can live successfully in the community, independently or in supervised apartments or group homes (unless there is an associated disorder that makes this impossible)." *Brown*, 948 F.2d at 270 (quoting DSM-III-R § 317.00).

[3]The Defendant points out that the court did not specify that the test was administered by Abigail Osborne-Elmer and adopted by Dr. Mabee. (ECF No. 21 at n.1) The Defendant is correct; however

ORDER DENYING DEFENDANT'S MOTION TO AMEND OR ALTER JUDGMENT - 4

rely upon those scores. (ECF No. 21 at 6.)  The Defendant reasoned: "[t]he ALJ's conclusion was in concert with Dr. Bailey's opinion that Plaintiff functioned at a higher level than his IQ test scores would indicate." (ECF No. 21 at 6.)

In September 2008, Ms. Osborne-Elmer examined Plaintiff and administered a variety of psychological tests, and determined Plaintiff's IQ scores fell "in the extremely low range," with a verbal score of 64, a performance score of 63 and a full scale score of 61. (Tr. 185; 191.)  On the first part of the Trail Making Test, on both Parts A and B, Plaintiff's score indicated severe impairment. (Tr. 191.)  On the Rey 15-item test, a screening of response effort for cognitive testing, Plaintiff's score "suggest[ed]" he gave "marginal effort." (Tr. 191.)  Ms. Osborne-Elmer opined, "It is likely his impaired performance on [the Rey 15-item test] is due to poor concentration, slow processing speed and low cognitive functioning." (Tr. 191.)  Ms. Osborne-Elmer diagnosed Plaintiff with dysthymic disorder and mild mental retardation.[4] (Tr. 191.)

The ALJ recognized Plaintiff's various test results fell into the severe impairment range and concluded, "given the results of the

---

this correction does not alter the court's analysis.

[4]Ms. Osborne-Elmer's narrative provided in part:

> Although he lives independently, he has had some problems with forgetting to turn the stove off, shopping independently, and paying his bills on time. Because of his extremely low Full Scale IQ score and deficits in adaptive functioning in the areas of education, employment, and social deficits, he currently meets the diagnostic criteria for mild mental retardation.

(Tr. 192.)

ORDER DENYING DEFENDANT'S MOTION TO AMEND OR ALTER JUDGMENT - 5

Rey-15 item test and the claimant's performance, the undersigned finds these test results are not an accurate reflection of the claimant's abilities." (Tr. 24.) Contrary to the Defendant's suggestion, the ALJ did not expressly reject Plaintiff's IQ scores, but instead focused on Plaintiff's "abilities." The ALJ failed to provide an explanation or cite to substantial evidence to indicate that the IQ test results were invalid. See *Wedge v. Astrue*, 624 F. Supp.2d 1127, 1133 (C.D. Cal. 2008)(ALJ did not provide sufficient reasons for rejecting the validity of a claimant's qualifying IQ score under § 12.05C, where the ALJ did not cite explicit reasons for discrediting the examining psychologist's opinion that the claimant had a performance IQ of 70); see also *Connett*, 340 F.3d at 874. As with Defendant's previous argument, the court is unable to accept Defendant's post hoc explanations of what the ALJ may have been thinking. See *Bray*, 554 F.3d at 1225–26.

**2.   The Second Impairment**.

Defendant argues that the Plaintiff did not meet the Listing because he lacked "a physical or other mental impairment imposing an additional and significant work-related limitation of function." (ECF No. 21 at 7.) Defendant asserted, "it is reasonable that the ALJ did not separate out limitations caused by a learning disorder from those caused by his low IQ . . . because the limitations were overlapping." (ECF No. 21 at 8.) In the court's order, the medical evidence on this issue was previously carefully considered by the court, and Defendant's current argument does not provide a basis for amending the judgment. "Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Frito–Lay of*

ORDER DENYING DEFENDANT'S MOTION TO AMEND OR ALTER JUDGMENT - 6

*Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384, 390 (D.C. Puerto Rico 1981). As the court decided in the Order, under *Fanning v. Bowen,* 827 F.2d 631, 633 (9th Cir. 1987) and the revised regulations for Listing 12.05C, the ALJ's step two finding that Plaintiff's mild mental retardation and learning disorder are severe impairments, satisfies the second prong of Listing 12.05C. (Opinion, at 9-10.)

**B.   Conclusion and Order**

The Plaintiff met the Listing for 12.05C and remanding for payment of benefits was not error. The Defendant's Motion to Alter or Amend the Judgment in this action **(ECF No. 20)** is **DENIED**.

DATED June 26, 2012.

                          S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE